IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EDUCATIONAL CREDIT
MANAGEMENT CORPORATION,

        Appellant/Defendant,

v.                                                                       Case No. 18-1281-JWB

VICKY JO METZ,

        Appellee/Plaintiff.

**MEMORANDUM AND ORDER**

Educational Credit Management Corporation ("ECMC") appeals the order and judgment of the bankruptcy court determining that repayment of the accrued interest on the student loan debt owed by debtor Vicky Jo Metz would constitute an undue hardship, and therefore was dischargeable under 11 U.S.C. § 523(a)(8). Metz filed a cross appeal asserting that it was error to discharge only the accrued interest and contends that discharge of the full debt is compelled by § 523(a)(8). The parties have fully briefed the issues in the appeal.[1] (Docs. 8, 11, 14.) Additionally, movants National Association of Consumer Bankruptcy Attorneys, National Consumer Bankruptcy Rights Center, and National Consumer Law Center seek to file an amicus brief. (Doc. 12.) The motion to file an amicus brief is GRANTED. Having reviewed the record and the applicable law, the bankruptcy court's order and judgment are AFFIRMED.

    **I. Appellate Jurisdiction**

---

[1] The parties have not requested oral argument. The court has determined that oral argument would not significantly assist in the determination of this appeal. Therefore, the case is ordered submitted without oral argument.

ECMC has elected to have the appeal heard by this court. 28 U.S.C. § 158(c)(1).[2] The appeal was timely filed by ECMC, and the bankruptcy court's order is "final" within the meaning of 28 U.S.C. § 158(a)(1). *See* Fed. R. Bankr. P. 8001–8002.

**II. Standard of Review**

This court functions as an appellate court when reviewing a bankruptcy court's decision. The court reviews the "bankruptcy court's legal determinations de novo and its factual findings under the clearly erroneous standard." *In re QuVIS, Inc.*, 469 B.R. 353, 365 (D. Kan. 2012) (citations omitted). Therefore, any factual findings by the bankruptcy court regarding Metz's financial situation are reviewed for clear error and whether those findings result in undue hardship under § 523(a)(8) is reviewed de novo. "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, the court is left with the definite and firm conviction that a mistake has been made." *In re Yellow Cab Co-op. Ass'n*, 132 F.3d 591, 597 (10th Cir. 1997). If there are "two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *In re Blinder, Robinson & Co.*, 124 F.3d 1238, 1241 (10th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985)).

**III. Statement of Facts[3]**

Vicki Metz attended community college from 1989 to 1991. She earned 50 credits but no degree. During that time, she borrowed $16,613.73 in various types of student loans. Metz consolidated her loans in 1994. At some point, the consolidated loan was assigned to ECMC. Since the consolidation, Metz has paid a total of $14,789.02 toward the loan; $13,060.75 through

---

[2] Metz filed a cross appeal with the Tenth Circuit Bankruptcy Appellate Panel. (Doc. 4.) That matter was then transferred back to this court after ECMC filed an election to transfer the cross-appeal. *See* BAP Appeal No. KS-18-91, Doc. 7.

[3] These facts are taken from the bankruptcy court decision, the transcript, and hearing exhibits.

chapter 13 administration. The interest rate on her loan is 9%. As of July 1, 2018, the loan balance was $67,277.88.

Metz was 59 at the time of the trial before the bankruptcy court (August 2018). Metz is single and has no dependents. She works as a community health worker for Sunflower Health Services, which is a subsidiary of Centene Management Corporation. Centene provides aging and disability services to the State on a contractual basis. Metz has been employed for a significant number of years. Prior to her current position, Metz worked for the Kansas Department of Aging and Disability Services as a senior care administrator. Before that, she spent 19 years working at the Kansas Department of Transportation. Metz routinely receives merit raises during employment. She testified at trial that she expected to receive a merit raise for 2018 and has received several raises in prior years.

When Metz filed her chapter 13 case in 2012, her scheduled gross monthly income was $3,500. That is now $3,800. She has also increased her other expenditures. Her insurance premiums have increased from $89 to $213. Metz also borrowed from her 401(k) plan and, between repayment of that loan and regular retirement contributions, she contributes about $310 monthly toward retirement. Metz's monthly take home pay is presently $2,430. Her expenses are currently $2,323. This amount is slightly higher than the amount scheduled in 2012. The difference was determined to be due to higher cable tv bills, slightly higher car payments, and car and renter's insurance premiums. Metz withholds $772 each month for income taxes, which is $206 higher than the amount withheld in 2012. Metz has consistently received tax refunds. The past three tax years resulted in refunds of $939, $1,067, and $1,135. Metz's rent is $550 and her car payment is $313. Metz has included $400 a month for food and reasonable amounts for

utilities. After utilizing Metz' figures, she has $107 of disposable income after her stated expenses. (Def. Exh. H.)

Metz has filed three separate chapter 13 cases. Her first case was filed in 2001 and later converted to chapter 7 in 2006. She proposed a $100 monthly payment on her student loan and ended up paying $4,717 during the first case. She then filed a second chapter 13 shortly after the discharge of her first case. Her chapter 13 plan was confirmed and later completed in December 2011. She then filed her third action in 2012. In her last two cases, she proposed that her student loan debt be paid pro rata with other unsecured creditors. Her payment was approximately $154 per month in her last case. (Tr. at 55.) ECMC received $4,112 in the second case and, in the third, $4,230.

Metz is eligible to consolidate her loan under a variety of income-based payment options ("income-based payment plans"). (Def. Exh. U.) Those plans include an Income Contingent repayment plan ("ICRP"), an Income-Based repayment plan ("IBR"), or the Revised Pay as You Earn plan ("REPAYE"). Metz has not applied for payment under the income-based payment plans. The regulations provide a formula under which the payments are calculated under the various plans. Depending on the plan, the payments would be based on Metz's adjusted gross income and whether her income was above or below the federal poverty level. See 34 C.F.R. § 685.208(k). The evidence at trial provided that the payment options available included monthly payments from $203 to $508. The payments would be as follows: $203.53 under REPAYE; $305.30 under IBR; and $508.23 under ICRP. (Def. Exh. U.) The bankruptcy court determined that none of these payments would result in Metz being able to fully repay the balance due over a 25-year repayment period. Under the regulations for the income-based payment plans, after the

4

applicable time period, either 20 or 25 years, the remaining balance on the loan is forgiven. At that time, a taxpayer may be subject to income taxes based on the amount forgiven.

Metz testified that she did not apply for the income-based payment plans because she did not believe that she could afford the monthly payment under any of the plans. (Tr. at 54.) Metz also testified that she was concerned about the amount of interest that would accumulate over the loan under the income-based payment plans. (Tr. at 22.) Metz sought a discharge of her entire student loan debt. (Doc. 5-3, Complaint to Determine Dischargeability.)

**IV. Analysis**

Under the relevant statute, a debtor will not receive a discharge "for an educational ... loan made, insured or guaranteed by a government unit," "unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]" 11 U.S.C. § 523(a)(8). To determine whether an undue hardship exists, the Tenth Circuit applies the following three-part test articulated in *Brunner v. New York State of Higher Education Services*:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1307 (10th Cir. 2004) (quoting *Brunner*, 831 F.2d 395, 396 (2nd Cir. 1987)).

"If the court finds against the debtor on any of the three parts, the inquiry ends and the student loan is not dischargeable." *Id.* Although the Tenth Circuit has adopted the *Brunner* test, it has cautioned that "to better advance the Bankruptcy Code's 'fresh start' policy, and to provide judges with the discretion to weigh all the relevant considerations, the terms of the test must be

5

applied such that debtors who truly cannot afford to repay their loans may have their loans discharged." *Id.* at 1309. The *Brunner* test does not "rule out consideration of all the facts and circumstances." *Id.* In this case, the bankruptcy court discharged the accrued interest on the loan based on its finding that failure to discharge the accrued interest would impose an undue hardship on Metz. Although the bankruptcy court concluded that Metz could pay the monthly payment under an income-based plan, the court found that it would not be a "fresh start" in that she would never be able to repay the loan, significant interest would continue to accrue, and she could have significant tax liability when she is in retirement.

ECMC contends that the bankruptcy court's decision to discharge the accrued interest on the loan was erroneous.

### A. Ability to Maintain Minimal Standard of Living

Under the first prong of the *Brunner* test, the court must consider "whether the debtor can maintain a minimal standard of living while repaying the debt." *Polleys*, 356 F.3d at 1309. In doing so, the court considers "all relevant factors, including the health of the debtor … and the debtor's education and skill level." *Id.* This court has interpreted a minimal standard of living as "living within the strictures of a frugal budget." *Educ. Credit Mgmt. Corp. v. Murray*, 2017 WL 4222980, at *2 (D. Kan. Sept. 22, 2017). This includes "food, shelter, clothing, and medical treatment." *In re Buckland*, 424 B.R. 883, 889 (Bankr. D. Kan. 2010).

With regard to this inquiry, the bankruptcy court found that "it appears that she could" pay the $203 REPAYE payment. (Bankr. Op. at 11.) Specifically, the bankruptcy court found that she can afford to pay $200 to $300 a month on the loan by trimming "her restaurant, recreation, and retirement expenses and, perhaps, adjust[ing] her tax withholding." (Bankr. Op. at 14.) However, the bankruptcy court determined that Metz could not make a monthly payment of

$564.60, which was the amount the bankruptcy court calculated as the amount necessary to pay the entire loan and accumulated interest over the next 25 years.[4]

First, ECMC argues that the bankruptcy court made factual findings that would support the conclusion that Metz could make the standard payment. (Doc. 8 at 19.) In its brief, ECMC argues that "were Metz to minimize her expenses accordingly, she would potentially realize at least $450 per month in surplus. This amount combined with the surplus Metz testified to at trial would be sufficient to repay the Consolidated Loan." (Doc. 8 at 20.) The bankruptcy court determined that Metz was able to pay $200 to $300 per month on her student loan. The bankruptcy court did not determine that Metz could pay $564.60. It is not clear where ECMC is finding the entire amount of $564.60 in Metz's budget to make the student loan payment. Without a specific objection to a finding by the bankruptcy court, this court is unable to find that the bankruptcy court erred on a factual determination. The bankruptcy court held that Metz could not pay $564.60 per month even if Metz was "stripped bare of anything other than her survival needs." (Bank. Op. at 11.) ECMC has not shown that the bankruptcy court's factual determinations regarding Metz's expenses were clearly erroneous. Reviewing Metz's expenses, this court agrees. Even if Metz were to reduce her withholding and her retirement saving, she would not be able to afford a $564.60 monthly payment. Although Metz could trim her recreation budget some, this would not be enough to account for such a large payment. The court finds that the bankruptcy court's factual determinations are supported by the evidence and not clearly erroneous.

Next, ECMC argues that the finding by the bankruptcy court that Metz can afford to pay $200-300 per month towards her loan, which would allow her to make payments under the

---

[4] This amount is based on the loan balance as of July 1, 2018.

REPAYE plan, must result in a determination that Metz has failed to meet the first factor of the *Brunner* test.

Because the parties do not dispute that Metz is able to pay $200 to $300 a month towards her loan, the court will not review that finding by the bankruptcy court. The question here essentially boils down to whether it was erroneous for the bankruptcy court to find that the first *Brunner* factor was met when Metz can make a monthly payment under REPAYE even though Metz will never be able to "repay" her loan fully and may suffer tax consequences when she is almost 80 years old.[5] In its reasoning, the bankruptcy court determined that Metz cannot repay the debt and maintain a minimal standard of living. The bankruptcy court declined to consider the availability of REPAYE as it was not sufficient to repay the loans and the accrued interest over the life of the loan. In support of its position, the bankruptcy court cited to *In re Murray*, 563 B.R. 52, 60 (Bankr. D. Kan. 2016), *aff'd sub nom. Educ. Credit Mgmt. Corp. v. Murray*, No. 16-2838, 2017 WL 4222980 (D. Kan. Sept. 22, 2017). In *Murray*, Judge Murguia upheld the bankruptcy court's decision to discharge the accrued interest on the loans. In this case, Metz heavily relies on the *Murray* case. In declining to consider the income-based plans, Judge Murguia reasoned as follows:

> The court noted that ECMC also presented evidence of two income based repayment programs ("IBR") that would require debtors to pay between $605.20 and $907.80 monthly. The Bankruptcy Court rejected these options because it concluded that it did not constitute payment of the student loan. To the contrary the amount due would only increase if these payments were made, with the interest on the loans increasing by around $2000 a month. Judge Somers also noted that although the IBR programs provide for loan forgiveness after 25 years, there is the potential that forgiveness would come with a large tax liability, thwarting the purpose of providing a fresh start and potentially saddling defendants with a new tax debt in their early seventies.

---

[5] Although the bankruptcy court calculated the loan payments to continue for 25 years under REPAYE, the regulations state that the term is only 20 years if the loan was for undergraduate studies, as it was in this case. 34 C.F.R. § 685.209(c)(5)(ii)(A).

8

>The court agrees. Although ECMC argues that debtors should be required to participate in an IBR plan, the court finds that these debtors are not examples of the freshly graduated young people who might seek to discharge student loans in bankruptcy prior to reaching their full earning potential. These debtors are in their forties and are potentially settled into the jobs they will hold for the rest of their careers. Mr. Murray sought more gainful employment that unfortunately failed. They have reduced their expenses in recent years and Judge Somers found their standard of living minimal. The court agrees that debtors could not maintain a minimal standard of living if required to repay their loans in full, but that they could reasonably be required to pay the principal. The court declines to make any decision regarding the appropriateness of considering IBRs in other cases. But the court does finds that the IBR plans would thwart these debtors' chance at a fresh start, under the facts of this case.

*Murray*, 2017 WL 4222980, at *3.

Metz argues that the analysis in *Murray* is applicable here. The court agrees. The Tenth Circuit has not held that borrowers are required to participate in income-based repayment plans. Rather, that is a consideration for the good faith factor of the *Brunner* test. *See In re Alderete*, 412 F.3d 1200, 1206 (10th Cir. 2005) ("The Bankruptcy Court recognized that participation in a repayment program is not required to satisfy the good-faith prong of the *Brunner* test. The court, however, considered this factor an important indicator of good faith. We agree with the Bankruptcy Court on this score.") Moreover, the circuit has held that "to better advance the Bankruptcy Code's 'fresh start' policy, and to provide judges with the discretion to weigh all the relevant considerations, the terms of the test must be applied such that debtors who truly cannot afford to repay their loans may have their loans discharged." *Polleys*, 356 F.3d at 1309. Ultimately, the court of appeals chose to couch the first *Brunner* factor in terms of "whether the debtor can maintain a minimal standard of living while *repaying* the debt." *Id.* (emphasis added). The selection of the term "repaying," rather than a more generalized term that might encompass mere partial interest payments, suggests courts should focus on whether the debtor can make payments

in amounts sufficient to pay down the principal.[6] Indeed, the Tenth Circuit further emphasized this point in *Polleys* saying, "the terms of the [*Brunner*] test must be applied such that debtors *who truly cannot afford to repay their loans may have their loans discharged. Id.* (emphasis added). That is what the bankruptcy court did in this case, and it was correct in doing so.

While ECMC argues against discharging the interest in this case, ECMC does not make a colorable argument that Metz could ever truly repay her loan. Rather, ECMC touts the income-based repayment plans and the fact that Metz's outstanding debt, which will balloon significantly over her retirement years, will ultimately be forgiven and without tax consequences.[7] While the court believes that the income-based repayment plans offer a benefit to some borrowers, the circumstances of this case lend to a finding that such a plan would thwart the fresh start policy. Metz will not see a significant increase in her income, she is approaching retirement age, her payments under REPAYE would not even cover the interest on her loan, and it will continue to grow.[8] Metz has continued to make payments on her loan, has not been in default, and has

---

[6] The court recognizes that the relevant statutes and regulations use the term "repayment" ubiquitously, and not always in a manner that conveys the idea of actually paying down the accrued debt. Nevertheless, even the regulations resort to a traditional notion of the term "repayment" when actually setting forth and describing the debtor's obligation to repay the loan. *See* 34 C.F.R. 685.207 (entitled "Obligation to repay"). Any, in any event, when the court of appeals used the terms "repay" and "repaying" in *Polleys*, the context suggests the use of those terms in their ordinary sense. *See Polleys*, 356 F.3d at 1309 (as quoted in the preceding and succeeding sentences of the text accompanying this note).

[7] ECMC is assuming that Metz will not have any significant assets at the time her debt would be forgiven. Under current law, "forgiveness of a student loan at the end of the IBRP period is taxable in the same way as forgiveness of any other debt outside bankruptcy. That is, to the extent a debtor's assets exceed liabilities after the forgiveness, the forgiven debt is taxable income." *In Re Murray*, 563 B.R. 52, 60 (Bankr. D. Kan. 2016), *aff'd sub nom. Educ. Credit Mgmt. Corp. v. Murray*, No. 16-2838, 2017 WL 4222980 (D. Kan. Sept. 22, 2017). The import of that argument is that under ECMC's plan, the debtor will be kept insolvent, if not entirely impoverished, until she is eighty years old and the debt is forgiven – what a pleasant system.

[8] Although the regulations allow for some forgiveness for the accumulation of interest, those provisions do not extend for the entire length of the loan. (Doc. 8 at 23) (discussing that Metz would be charged 50 percent of the accrued interest); 34 C.F.R. § 685.209(c)(2)(iii). ECMC contends that the bankruptcy court's calculations were erroneous. Although the bankruptcy court's calculations did not take into account interest forgiven, the court finds that any error on the calculations does not require reversal as it was harmless. Based on a review of the decision, the final number determined by the bankruptcy court with respect to interest accrued after 25 years was not the only reason that the bankruptcy court found that the first factor was met. Rather, the bankruptcy court reasoned that Metz would only service her debt, not pay down on the principal amount owed, and could never repay her debt. These reasons were

consistently been employed. Nevertheless, her balance has continued to grow. Metz is not a borrower who has the potential to one day pay off this loan balance. The court finds that the income-based payment plans would thwart Metz's chance at a fresh start. Metz should have the opportunity to pay the principal amount owed, at a payment she can afford. The court's finding is applicable only to the facts of this case. As in *Murray*, the court's ruling should not be interpreted as foreclosing consideration of a payment amount under an income-based payment plan on the first factor in other cases.

The court finds that the bankruptcy court did not err in finding that Metz met the first factor of the *Brunner* test.

### B. Whether Circumstances are Likely to Persist

The Tenth Circuit explained the second factor of the *Brunner* test as follows:

> The second prong of the *Brunner* test considers whether there are other circumstances making it likely that the debtor will not be able to pay his loans for a significant portion of the repayment period. The reason for this requirement is simple: A recent graduate's salary might be so low that it is difficult to pay the loans now, but it is clear that his salary will increase in the future and therefore his loans should not be discharged. In *Polleys*, we clarified how a court should decide if the second prong is met. In order to decide whether additional circumstances exist, a realistic look must be made into the debtor's circumstances and the debtor's ability to provide for adequate shelter, nutrition, health care, and the like. We further noted that courts should base their estimation of a debtor's prospects on specific articulable facts, not unfounded optimism, and the inquiry into future circumstances should be limited to the foreseeable future, at most over the term of the loan.

*In re Alderete*, 412 F.3d at 1205.

The bankruptcy court determined that Metz met the second factor after finding that Metz's financial situation is unlikely to change, her income would likely decrease upon retirement, and that she had no prospects of increased income or decreased expenses. (Bankr. Op. at 14.) ECMC

---

not solely based on the exact amount of accumulated interest calculated by the bankruptcy court. Clearly, a payment of $209 per month would not cover the monthly interest on the outstanding balance of $67,277.88, at a rate of 9%.

argues that this finding was erroneous because Metz has not presented truly exceptional circumstances, such as illness, disability, or a large number of dependents. (Doc. 8 at 33.) In support of its argument, ECMC cited to the New Mexico Bankruptcy Court's opinion in *Alderete*, 289 B.R. 410, 418 (N.M. Bankr. 2002). (*Id.*) That decision was reversed by the Tenth Circuit in *In re Alderete*, 412 F.3d at 1205. As quoted above, our court of appeals has stated that the court must look at additional circumstances in determining whether Metz's situation is likely to change. The only fact that ECMC can point to is the fact that Metz gets an annual merit raise. Although Metz testified to such raises, there is no evidence that the amount is significant such that it would allow her income to increase to a point that she could afford a larger payment amount. Notably, since 2012, Metz's income has only increased $300 per month, which is less than 10% over a six-year period. These increases are not significant and may provide just enough to account for inflation. Moreover, Metz is nearing retirement age and she has no prospect of changing careers or significantly increasing her earnings. There is also no evidence that her monthly expenses will decrease. The court finds that the bankruptcy court's determination that Metz's circumstances are likely to persist is supported by the record.

### C. Good Faith

The final factor of the *Brunner* test is whether Metz acted in good faith in repaying her student loans. *Id.* at 1205-06. The bankruptcy court determined that Metz had made a good faith effort to repay her loan, that her efforts show that she intended to pay her debt, and that her prospects of paying it all are hopeless. (Bankr. Op. at 15-16.) ECMC argues that this finding was error because Metz failed to apply for the income-based repayment plans, failed to minimize her expenses, and her student loan debt was a motivating factor in one of her bankruptcy proceedings.

The Tenth Circuit has held that a court may consider the repayment plans in the *Brunner* test when reviewing the good faith factor. *See In re Alderete*, 412 F.3d at 1206.

After the discharge of her last plan, Metz filed this action. Metz testified that she did not apply for the income-based repayment plans because she believed that she could not afford the payments and she was concerned about the accrual of the debt. In this case, the failure to apply for the income-based repayment plans is not an indication that Metz lacked good faith. Metz's monthly expenditures, as she has calculated, only provided for approximately $100 per month to go towards her student loans. This is less than the payment required under the income-based repayment plans. Although the court has determined that she could cut her expenses in certain areas and retirement contributions to afford the $205 monthly payment under REPAYE, Metz's testimony that she could not afford this payment is supported by her monthly schedule submitted to the bankruptcy court.

With respect to Metz's bankruptcies, ECMC argues that Metz's testimony that the student loan debt was a motivating factor shows a lack of good faith. The authority cited by ECMC, however, does not stand for the proposition that student loan debt cannot be a "motivating factor" for bankruptcy. Clearly, any significant debt could be a factor in one's decision to file for bankruptcy. ECMC also argues that a debtor lacks good faith if the ratio of student loan debt to other debt is high. ECMC, however, fails to cite to evidence in the record showing the percentage of student loan debt to other debt in Metz's prior bankruptcies. (Doc. 8 at 41.)

The record shows that Metz has continually paid on her student loan while in Chapter 13 proceedings. Essentially, Metz has been paying on a bankruptcy plan since 2001. The bankruptcy court held that Metz made nearly all payments required in the 2001 case and completed both plans in her 2006 and 2012 case. The court agrees with the bankruptcy court that this is "no mean feat

and it shows that she intended to pay at least some of her student loan debt." (Bankr. Op. at 15.) Metz has clearly struggled with financial issues during the past 20 years. Metz, however, has continued to make payments on her student loan as required under her plans that were approved by the bankruptcy court. Metz believed that she could not afford a payment under the income-based repayment plan and that belief has not been shown to be in bad faith. Moreover, under the circumstances of this case, Metz's payments under the income-based repayment plans would not stop the accrual of additional interest and her payments would therefore contravene the fresh start policy of the Bankruptcy Code. The court finds that Metz has made a good faith effort to pay her loan, but she will be unable to pay the entire loan.

The court finds that the bankruptcy court's decision to discharge the interest on Metz's student loan was not erroneous.

**D.    Cross Appeal**

Metz argues on appeal that the bankruptcy court erred in discharging only her accumulated interest. Metz contends that a full discharge is required by the statute. Metz argues that the statute is essentially an all-or-nothing contemplation and the absence in the statute of words such as "to the extent" of undue hardship supports her position that a partial discharge is not allowed. (Doc. 11 at 15.) Metz cites to *Skaggs v. Great Lakes Higher Educ. Corp. (In re Skaggs)*, 196 B.R. 865, 866-67 (Bankr. W.D. Okla. 1996), for the proposition that section 523(a)(8) provides an all-or-nothing approach to the discharge of student loan debt. (Doc. 11 at 15.)

Although the Tenth Circuit has not expressly ruled on the ability to grant a partial discharge, the court of appeals has discussed it in dicta. The court of appeals stated that "[w]e agree with our sister circuits that a bankruptcy court cannot exercise its § 105(a) [equitable] powers to grant a partial discharge of student loans unless § 523(a)(8) has been satisfied…Because the

Bankruptcy Court found that no undue hardship existed, it lacked the power to grant a partial discharge, and thus erred in granting the Alderetes such relief." *In re Alderete*, 412 F.3d at 1207. The majority of courts have rejected the all-or-nothing approach, finding "that an all-or-nothing approach to the dischargeability of student debt contravenes Congress' intent in granting bankruptcy courts equitable authority to enforce the provisions of the Bankruptcy Code." *In re Saxman*, 325 F.3d 1168, 1174 (9th Cir. 2003). The court agrees and finds that the bankruptcy court's equitable powers allow the court to grant a partial discharge of student loan debt upon a finding of undue hardship. *Id.*; *see also In re Alderete*, 412 F.3d at 1207.

Based on a finding that Metz has established an undue hardship and that Metz has the ability to repay the principal portion of her student loan debt, the court finds that the bankruptcy court did not err in only granting a partial discharge.

### V. Conclusion

The bankruptcy court's Order and Judgment finding that Metz's accrued interest on her student loan is dischargeable under 11 U.S.C. § 523(a)(8) is hereby AFFIRMED.

IT IS SO ORDERED this 2nd day of May, 2019.

                                                    __s/ John W. Broomes_____
                                                    JOHN W. BROOMES
                                                    UNITED STATES DISTRICT JUDGE